UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, ) | |
| ) | 12 C 6036 |
| Plaintiff, ) | |
| ) | Judge Feinerman |
| vs. ) | |
| ) | |
| YITAO SUN, YAQUN ZHANG, S.C. (a minor), AJIN ZHU, ) | |
| and JIADING ZHANG, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| YAQUN ZHANG, S.C. (a minor), AJIN ZHU, and JIADING ) | |
| ZHANG, ) | |
| ) | |
| Counter-Claimants/Cross-Claimants, ) | |
| ) | |
| vs. ) | |
| ) | |
| METROPOLITAN LIFE INSURANCE COMPANY and ) | |
| YITAO SUN, ) | |
| ) | |
| Counter-Defendant and Cross-Claim Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| YITAO SUN, ) | |
| ) | |
| Counter-Claimant/Cross-Claimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| METROPOLITAN LIFE INSURANCE COMPANY, ) | |
| YAQUN ZHANG, S.C. (a minor), AJIN ZHU, and JIADING ) | |
| ZHANG, ) | |
| ) | |
| Counter-Defendant and Cross-Claim Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Metropolitan Life Insurance Company ("MetLife") brought this interpleader suit pursuant to Federal Rule of Civil Procedure 22 and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), against Yitao Sun, Yaqun Zhang, S.C. (a minor), Ajin Zhu, and Jiading Zhang, to resolve competing claims to benefits on a life insurance policy held by Yajiong Zhang ("Decedent") at the time of his death on February 21, 2011. Docs. 1, 14. Sun filed counterclaims against MetLife for recovery of life insurance benefits and equitable relief under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), and for common law fraud and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* ("ICFA"). Doc. 19. Yaqun Zhang filed counterclaims against MetLife for breach of contract, breach of fiduciary duty, unjust enrichment, and a declaratory judgment. Doc. 25 at pp. 6-18. MetLife has moved to dismiss the counterclaims under Rule 12(b)(6). Doc. 42. The motion is granted in part and denied in part.

**Background**

In considering MetLife's motion to dismiss, the court assumes the truth of the counterclaims' factual allegations, though not their legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court also must consider "documents attached to the [counterclaims], documents that are critical to the [counterclaims] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Sun's and Yaqun Zhang's briefs opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Sun and Yaqun Zhang as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

A. **Allegations Common to Sun and Yaqun Zhang's Counterclaims**

Sun is Decedent's widow. Doc. 19 at ¶ 5; Doc. 25 at p. 7, ¶ 5. Sun married Decedent in 2005. Doc. 19 at ¶ 10; Doc. 25 at p. 7, ¶ 12. Yaqun Zhang is Decedent's sister. Doc. 19 at ¶ 6; Doc. 25 at p.6, ¶ 1. S.C. is a minor and Decedent's niece. Doc. 19 at ¶ 7; Doc. 25 at p. 6, ¶ 3. Ajin Zhu and Jiading Zhang are Decedent's parents. Doc. 19 at ¶¶ 8-9; Doc. 25 at p. 6, ¶ 4.

From prior to his marriage to Sun through August 5, 2008, Decedent was employed by Cisco Systems, Inc. Doc. 19 at ¶ 11; Doc. 25 at pp. 7, 9, ¶¶ 6, 21. Decedent participated in Cisco's Life Insurance Plan, an ERISA-regulated employee welfare benefit plan sponsored by Cisco and funded by a group life insurance policy issued by MetLife, bearing the Group Policy Number 113189-G ("Policy 1"). Doc. 19 at ¶ 12; Doc. 25 at p. 7, ¶ 7. Policy 1 consisted of a Basic Life Insurance Policy and a Supplemental Life Insurance Policy. Doc. 14-1; Doc. 14-2; Doc. 25 at p. 7, ¶ 8. The Basic Policy provided a death benefit equal to Decedent's annual salary. Doc. 25 at p. 7, ¶ 8. The Supplemental Policy provided a death benefit equal to five times Decedent's salary. *Ibid*. Prior to his marriage to Sun, the beneficiary designation for Decedent's life insurance coverage under Policy 1 named Jiading Zhang, Yaqun Zhang, Ajin Zhu, and S.C. each as 25% beneficiaries. *Id*. at p. 7, ¶ 10; Doc. 19 at ¶ 14. As of January 2008, the total death benefit under Policy 1 was $693,000. Doc. 19 at ¶ 20; Doc. 25 at p. 7, ¶ 9.

In 2007, Decedent was diagnosed with cancer and became disabled. Doc. 19 at ¶ 15; Doc. 25 at p. 7, ¶ 11. Decedent's last day of work was January 21, 2007, and he was terminated on August 5, 2008. Doc. 19 at ¶¶ 15-16; Doc. 25 at pp. 8-9, ¶¶ 18, 21. After the termination, MetLife provided Decedent an Election of Portable Coverage Form, dated August 6, 2008 ("Portable Form"). Doc. 19 at ¶ 18; Doc. 14-5; Doc. 25 at p. 9, ¶ 22. The Portable Form identifies a different group insurance policy, bearing Policy Number 93211-G ("Policy 2"). Doc.

3

14-5 at 2; Doc. 25 at p. 9, ¶ 23. Using the Portable Form, Decedent ported his Basic Life Insurance and Supplemental Life Insurance coverage from Policy 1 to Policy 2. Doc. 14-5; Doc. 19 at ¶ 18. Decedent completed a beneficiary designation form for Policy 2 naming Sun as a 33% beneficiary and Yaqun Zhang as a 67% beneficiary. Doc. 14-5 at 3.

> B. **Allegations Specific to Sun's Counterclaims**

Policy 1 provides that Decedent's insurance terminates upon the termination of his employment at Cisco. Doc. 19 at ¶ 17. Following Decedent's completion of the Portable Form, MetLife sent monthly invoices to Decedent and Sun for the premiums owed under Policy 2, and Decedent and Sun paid the amounts owed. *Id*. at ¶ 19. From the time Decedent's employment was terminated until he died on February 21, 2011, Sun and Decedent paid $7,556.33 in premiums on Policy 2. *Ibid*.

On or about March 23, 2011, approximately a month after Decedent died, MetLife informed Sun that after Decedent became disabled, Cisco continued to pay Decedent's premiums for Basic Insurance coverage under Policy 1. *Id*. at ¶ 21. Further, Sun was informed that MetLife supposedly had approved a waiver of premiums in December 2008, which continued Decedent's Supplemental Life Insurance coverage under Policy 1. *Ibid*. As a result, according to MetLife, Decedent was not eligible to port his Basic Life Insurance and Supplemental Life Insurance coverage from Policy 1 to Policy 2, Policy 1 remained in effect, and the ported coverage in Policy 2 was terminated and/or void. *Ibid*.

Prior to March 23, 2011, Cisco never informed Decedent or Sun that Cisco was continuing to pay the premiums for Decedent's Basic Life Insurance coverage under Policy 1 or that there had been a premium waiver for Decedent's Supplemental Life Insurance coverage under Policy 1. *Id*. at ¶ 22. Instead, MetLife sent Sun and Decedent monthly invoices for

premiums owed under Policy 2, and MetLife accepted their premium payments. *Ibid*. MetLife has refused to provide Sun benefits under Policy 1 because it claims that it cannot determine whether or not a court would find that Decedent changed his beneficiaries for Policy 1 when he completed the August 26, 2008 beneficiary designation on the Portable Form. *Id*. at ¶ 23. In naming Sun as a beneficiary in the Portable Form, Decedent clearly expressed his intention that Sun be a beneficiary of Decedent's life insurance benefits. *Id*. at ¶ 24.

      C.      **Allegations Specific to Yaqun Zhang's Counterclaims**

In a January 14, 2008 letter from Cisco's benefits manager, Decedent was advised that his Basic Life Insurance and Supplemental Life Insurance coverage under Policy 1 would be continued at no cost to him while on medical leave. Doc. 25 at p. 8, ¶ 17; Doc. 25-1. Decedent was also advised that he should have received a separate letter from MetLife regarding "continued eligibility and early termination provisions under the Waiver of Premium Provision." Doc. 25 at p. 8, ¶ 19; Doc. 25-1. MetLife did not send and/or Decedent did not receive that separate letter. Doc. 25 at p. 9, ¶ 20. The total amount of the death benefits under Policy 2 was $761,000. Doc. 25 at p. 9, ¶ 29; Doc. 14-5 at 2.

Following Decedent's death in February 2011, MetLife issued claim forms for Policy 1 but not for Policy 2. Doc. 25 at p. 10, ¶ 32. On February 22, 2012, Yaqun Zhang filed an administrative appeal with MetLife regarding the enforceability of Policy 2. *Id*. at p. 10, ¶ 35. To date, MetLife has not paid any benefits under Policy 1 or Policy 2 and has not provided a decision or determination regarding Yaqun Zhang's administrative appeal. *Id*. at p. 10, ¶ 36.

On or about March 23, 2011, MetLife refunded Sun for all premiums paid on Policy 2. *Id*. at p. 10, ¶ 37. Sun unilaterally accepted the refund. *Id*. at p. 10, ¶ 38. Sun did not notify Yaqun Zhang of MetLife's offer to refund the premiums paid on Policy 2 or that she had

5

accepted the refund until well after she had done so. *Id*. at p. 11, ¶ 39. MetLife did not notify Yaqun Zhang of the refund offer or that Sun's accepting a refund of the premiums would result in MetLife claiming that Policy 2 was terminated or rescinded. *Id*. at p. 11, ¶ 40.

Decedent intended to provide financially for his parents and his niece through the death benefit payable under Policy 1. *Id*. at p. 13, ¶ 55. Decedent intended and understood that Policy 2 would provide separate and additional life insurance coverage with death benefits payable to his sister and his wife. *Id*. at p. 13, ¶ 58. Decedent did not intend or understand that Policy 2 would be rescinded, leaving only Policy 1 to remain in force and effect. *Id*. at p. 13, ¶ 59. Yaqun Zhang claims that she, Jiading Zhang, Ajin Zhu, and S.C. are each entitled to 25% of the proceeds of Policy 1, and that she also is entitled to 67% of the proceeds of Policy 2. *Id*. at p. 12, ¶¶ 49-50.

## Discussion

### I. Yaqun Zhang's Counterclaims

Yaqun Zhang's counterclaims rest on the premise that *both* Policy 1 and Policy 2 remained in effect until Decedent's death, and thus that the beneficiaries of Policy 1 are entitled to payment of its $693,000 in benefits and the beneficiaries of Policy 2 are entitled to payment of its $761,000 in benefits, for a total recovery of $1,454,000. This theory fails. Under the plain language of the policies, so long as Policy 1 remained in effect—a fact admitted by Yaqun Zhang—Policy 2 did not permit additional coverage and was null and void.

Yaqun Zhang's answer to the interpleader complaint admits that "the Decedent was a participant in the Cisco Systems, Inc. Life Insurance Plans (the 'Plan'), an ERISA-regulated employee welfare benefit plan sponsored by Cisco Systems, Inc. and funded by a group life insurance policy issued by MetLife." Doc. 14 at ¶ 9; Doc. 25 at p. 2, ¶ 9. Her answer further

6

admits that "[a]t the time of his death, the Decedent was enrolled under [Policy 1] for Basic Life Insurance coverage and Supplemental Life Insurance coverage in the total amount of six hundred and ninety-three thousand dollars ($693,000) (the 'Plan Benefits'). The Plan Benefits became payable to the proper beneficiaries upon the Decedent's death, pursuant to the terms of [Policy 1]." Doc. 14 at ¶ 11; Doc. 25 at p. 2, ¶ 11. Similarly, Yaqun Zhang's counterclaims allege that "[a]s of October 1, 2006 and continuing thereafter, Decedent was insured under Group Policy No. 113189-G," which Zhang identifies as "Policy No. 1." Doc. 25 at p. 7, ¶ 7. And Yaqun Zhang's counterclaims and her response brief refer to and attach evidence reflecting that Cisco paid for the Basic Life Insurance premiums under Policy 1 and that MetLife granting a waiver for the Supplemental Life Insurance premiums under Policy 1. Doc. 25-1; Doc. 56-1 at 12; Doc. 56-3; Doc. 56-4.

MetLife argues that Yaqun Zhang is seeking "double benefits," and that the governing documents establish that Policy 1 and Policy 2 were specifically designed to prohibit concurrent coverage. MetLife is correct. Policy 1's provision for "Continuation of Insurance With Premium Payment If You are Totally Disabled on the Date Your Employment Ends" states:

> If You are Totally Disabled on the date Your employment ends and You elect to continue Portability Eligible Insurance and/or Portability Eligible Dependent Insurance as provided in this subsection, You may at a later date become approved for continuation of insurance under the section entitled ELIGIBILITY FOR CONTINUATION OF CERTAIN INSURANCE WHILE YOU ARE TOTALLY DISABLED. If You are so approved, *any insurance continued under this subsection or any new certificate provided under this subsection will end and We will return any premium paid by You for such insurance*.

Doc. 14-2 at 41 (italics added). Similarly, Policy 2 states that its coverage is limited to individuals whose coverage was terminated under their "Former Plan," meaning Policy 1: "Former Plan means the group plan insured by Us under which You Were provided the option or

7

privilege of continuing the insurance provided under such plan. *Such insurance must have ended as set forth in the provisions of such plan, which specify that the continued insurance will be provided under another group policy.*" Doc. 51-3 at 10 (emphasis added). Policy 2 also states:

> In the event You became entitled to a death benefit under the Continued Death Benefits During Total Disability provision of Your Former Plan [Policy 1], *Your insurance under the Group Policy will end on the date You became covered for such death benefit under the Former Plan* [Policy 1]. We will return any contributions made by You for Your insurance under the Group Policy for the period from when You became covered for such death benefit under the Former Plan [Policy 1] to the date of the claim.

Doc. 51-3 at 23 (emphasis added).

The meaning of these provisions is clear. Policy 2 was intended to provide fallback coverage only if Decedent was not granted a waiver for his premiums under Policy 1. Policy 2's terms plainly state that if an individual elects to port his coverage but then is subsequently approved for continued coverage under his preexisting plan, then his coverage under the ported policy terminates and any premiums paid for that coverage will be returned. Here, Yaqun Zhang admits that Decedent's insurance coverage continued under Policy 1. Doc. 25 at p. 7, ¶ 7; Doc. 25-1. She further admits that MetLife refunded all premiums paid by Sun and Decedent for coverage under Policy 2. Doc. 25 at p. 10, ¶ 37. These admissions are fatal to her counterclaims. Had Yaqun Zhang claimed that Policy 2 *replaced* Policy 1, the court could not dismiss that claim because the pleadings would not definitively resolve whether Policy 1 remained in effect or had been supplanted by Policy 2. But because Yaqun Zhang admits that Policy 1 remained in effect, she has pleaded out of court her counterclaims, each of which seeks recovery under Policy 2. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (holding that a plaintiff "can plead [herself] out of court by pleading facts that show that [she] has no legal claim"); *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d

449, 455 (7th Cir. 1998) (a "plaintiff may plead [herself] out of court by attaching documents to the complaint that indicate that [she] is not entitled to judgment") (internal quotation marks omitted).

Yaqun Zhang's response makes no attempt to challenge the plain meaning of the policy documents. Instead, Yaqun Zhang focuses on MetLife's failure to notify Decedent that Policy 1 remained in effect, and the possibility that this lack of notice could have led Decedent to believe "that MetLife was offering and Decedent was obtaining another policy (i.e., the Ported Group Policy)." Doc. 56-1 at 13-14. It certainly is true that MetLife's communications with Decedent and Sun fell short. But MetLife's failure in this regard does not undermine the fact that Yaqun Zhang, under the express and unambiguous terms of the plan documents, has no viable claim entitling her or any claimant to proceeds from Policy 2. *See N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 454-55 ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

## II.     Sun's Counterclaims

### A.     ERISA – Recovery of Benefits (Count I)

Sun's first counterclaim alleges that "the Decedent clearly expressed his intention that Sun be a beneficiary of the Plan Benefits," that "Sun is entitled to 33% of the Plan Benefits," and that "MetLife has refused to provide [Sun] her benefits under [Policy 1]." Doc. 19 at ¶¶ 23-25. MetLife argues that Count I must be dismissed because it improperly seeks to circumvent MetLife's interpleader action. MetLife is correct.

Sun's answer to the interpleader complaint admits that competing claims for Decedent's life insurance benefits have been submitted and that "MetLife is ready, willing and able to pay the Plan Benefits, in accordance with the terms of the Plan, in such amounts and to whichever

9

Defendants the Court shall designate." Doc. 23 at ¶¶ 22-25, 28-30, 33-34. Similarly, Count I of Sun's counterclaims alleges that MetLife refuses to pay Sun any benefits "because it claims that it cannot determine whether a court would find that the Decedent changed his beneficiaries of the Plan Benefits when he completed the August 26, 2008 beneficiary designation on the Election of Portable Coverage Form." Doc. 19 at ¶ 23. Sun's allegations and admissions establish that Count I attempts to circumvent MetLife's interpleader complaint.

"Interpleader is an equitable procedure used when the stakeholder is in danger of exposure to double liability or the vexation of litigating conflicting claims." *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008); *see also Indianapolis Colts v. Mayor & City Council of Baltimore*, 741 F.2d 954, 957 (7th Cir. 1984). When an interpleader is properly asserted, counterclaims seeking payment of the interpleaded funds are disallowed. *See Daniels v. Equitable Life Assurance Soc. of the U.S.*, 35 F.3d 210, 214-15 (5th Cir. 1994) ("if the state court found that Equitable's interpleader was appropriate, Equitable cannot now be found to have breached a duty to Daniel by interpleading the funds"); *Abstract & Title Guar. Co. v. Chi. Ins. Co.*, 2006 WL 1343860, at *4 (S.D. Ind. May 12, 2006) ("CIC cannot be liable to ATG for breach of contract because of its lawful commencement of the interpleader action"); *Lutheran Bhd. v. Comyne*, 216 F. Supp. 2d 859, 862-63 (E.D. Wis. 2002) ("[Defendant's] counterclaims are essentially based on the plaintiff's having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse complaints. Courts have consistently rejected such counterclaims where, as here, the plaintiff was entitled to pursue interpleader relief.") (collecting cases); *U.S. Trust Co. of N.Y. v. Alpert*, 10 F. Supp. 2d 290, 307 (S.D.N.Y. 1998) ("Since the Trustees in bringing their interpleader action thus acted within the rights granted to them by law,

counterclaims cannot be grounded upon adherence to such a statutorily authorized procedure.") (internal quotation marks omitted).

Faced with this line of cases, Sun's response provides no authority to the contrary, which forfeits the point. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2011) (a party's failure to oppose an argument permits an inference of acquiescence, and "acquiescence operates as a waiver"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver."); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007). Any such response would have been futile in any event given the clear law on the subject. Accordingly, Count I of Sun's counterclaims is dismissed.

B.      **ERISA – Equitable Estoppel (Count II)**

Sun's ERISA equitable estoppel claim alleges that if the court determines that Sun is not a beneficiary under Policy 1, equity requires that MetLife pay Sun an amount equal to 33% of Policy 1's benefits, which is the percentage of Decedent's insurance benefits that Sun would have received under his revised beneficiary designation for Policy 2. Doc. 19 at ¶¶ 31-34. MetLife argues that the equitable estoppel claim fails as a matter of law. MetLife is incorrect.

As a general rule, the written plan documents govern the administration of ERISA benefits. *See Kannapien v. Quaker Oats Co.,* 507 F.3d 629, 636 (7th Cir. 2007). There is a narrow exception, which provides that "[s]tatements or conduct by individuals implementing the plan may estop the employer from enforcing a plan's written terms," but "only in extreme circumstances." *Pearson v. Voith Paper Rolls, Inc.*, 656 F.3d 504, 509 (7th Cir. 2011); *see also Kannapien,* 507 F.3d at 636; *Vallone v. CNA Fin. Corp.,* 375 F.3d 623, 639 (7th Cir. 2004); *Sandstrom v. Cultor Food Science, Inc.*, 214 F.3d 795, 797 (7th Cir. 2000) ("only extreme

11

circumstances … justify estoppel"). To prevail on an ERISA equitable estoppel theory, "[a] plaintiff demonstrating extreme circumstances must *also* show (1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that misrepresentation by the plaintiff; and (4) that the reliance was to the plaintiff's detriment." *Pearson*, 656 F.3d at 509 (emphasis added); *see also Kannapien,* 507 F.3d at 636; *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585-86 (7th Cir. 1999). The Seventh Circuit's articulation of the ERISA estoppel doctrine in *Pearson* appears to require that the court first determine whether there are extreme circumstances and, if so, then to determine whether the four listed elements are present.

Here, Sun has adequately alleged the extreme circumstances necessary to assert an ERISA estoppel claim. Sun alleges that MetLife engaged in a series of "misrepresentations, omissions and misconduct," including: (1) accepting the Portability Form from Decedent, including the change in beneficiaries, thereby misleading Decedent and Sun into believing that Decedent had properly named Sun as a beneficiary; (2) failing to inform Sun or Decedent that Cisco was still paying Decedent's Basic Life Insurance premiums under Policy 1 or that MetLife had waived premiums for the Supplemental Life Insurance under Policy 1; (3) sending invoices to Decedent and Sun for life insurance premiums on Policy 2 from August 2008 until Decedent's death, which misled Decedent and Sun into believing that Policy 2's coverage was valid and that Decedent had properly named Sun as a beneficiary; (4) accepting life insurance premium payments for Policy 2 for over two years; and (5) failing to inform Decedent or Sun until after Decedent's death that the coverage under Policy 2 was terminated or void. Doc. 19 at ¶ 28. Taken together, these allegations satisfy the extreme circumstances requirement. *See Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 587-90 (7th Cir. 2000) (upholding an ERISA estoppel claim where the plaintiff's employer provided "misleading and incomplete information"

regarding whether the plaintiff had to pay her insurance premiums, which resulted in the plaintiff failing to make timely payments); *Swaback v. Am. Info Techs. Corp.*, 103 F.3d 535, 542-43 (7th Cir. 1996) (upholding an ERISA estoppel claim where the plaintiff's decision not to elect a lump sum retirement benefit resulted from "repeated written and oral misrepresentations" from his employer regarding his eligibility for a lump sum benefit).

Sun also has adequately pleaded the four elements of an ERISA estoppel claim. The first element, a knowing misrepresentation, requires a *mens rea* beyond mere negligence. "A claim will *not* lie for every false statement reasonably and detrimentally relied upon by an unwitting plaintiff." *Coker*, 165 F.3d at 585-86. "Arguments that negligent misrepresentations 'estop' sponsors or administrators from enforcing the plans' written terms have been singularly unsuccessful." *Decatur Mem'l Hosp. v. Conn. Gen. Life Ins. Co.*, 990 F.2d 925, 926-27 (7th Cir. 1993); *see also Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 127 (7th Cir. 1992); *Vershaw v. Nw. Nat'l Life Ins. Co.*, 979 F.2d 557, 559 (7th Cir. 1992). "To the extent that the common law will sometimes hold parties to the terms of a misleading representation for no reason other than the circumstance that such a misleading representation was made, such is not the common law of ERISA in this Circuit." *Coker*, 165 F.3d at 586 (internal quotation marks omitted); *see also Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 649 (7th Cir. 1993) (same). That said, a "knowing misrepresentation" need not rise to the level of an intent to deceive. *See Bowerman*, 226 F.3d at 587-90 (upholding an ERISA estoppel claim without evidence of an intent to deceive); *Miller v. Taylor Insulation Co.*, 39 F.3d 755, 759 (7th Cir. 1994) (same); *Winkelspecht v. Gustave A. Larson Co.*, 857 F. Supp. 2d 793, 800-02 (E.D. Wis. 2012) ("Although the precise state of mind that is required to support a claim for estoppel in the ERISA context is not entirely clear from the cases, an intent to deceive would not seem to be an essential

13

element. Intent to deceive would establish fraud, not estoppel."). With respect to the first element, Sun alleges that "MetLife acted with an intention to defraud the Decedent and Sun by requiring Decedent and Sun to pay life insurance premiums, despite having knowledge that [Cisco] was paying Decedent's Basic Life Insurance premiums and despite the fact that MetLife waived the Supplement Life Insurance premiums." *Id*. at ¶ 29. This allegation goes beyond negligence to the kind of knowing misrepresentation sufficient to sustain an ERISA estoppel claim, and the allegation is plausible for the reasons previously given for holding that Sun has adequately alleged extreme circumstances. *See Bowerman*, 226 F.3d at 587-90; *Miller*, 39 F.3d at 759; *Winkelspecht*, 857 F. Supp. 2d at 800-02.

Sun also alleges that the misrepresentations were made in writing, in the form of the invoices sent by MetLife to Sun and Decedent for the premiums under Policy 2. *See* Doc. 19 at ¶¶ 19, 22, 28; Doc. 19 at 12-15. Sun further alleges that "Decedent and Sun relied on MetLife's misrepresentations, omissions and misconduct, and believed that the Decedent had properly ported his life insurance coverage and had named Sun as a beneficiary." *Id*. at ¶ 31. Under the circumstances alleged in Sun's counterclaims—including Sun's and Decedent's monthly receipt of MetLife invoices for Policy 2, as well as MetLife cashing the premium payments for Policy 2—a reasonable jury could find that this reliance was reasonable.

Finally, Sun has adequately pleaded detriment resulting from her reliance on MetLife's misrepresentations. Sun alleges that due to MetLife's conduct, she and Decedent were misled into thinking that Sun would be entitled to a portion of Decedent's life insurance benefits upon his death. Sun further alleges that but for MetLife's misrepresentations, Decedent would have updated his life insurance beneficiary designations to ensure that Sun received the benefits under Policy 1 that are now contested by multiple claimants. Doc. 19 at ¶¶ 23-25, 28, 31-32. These

14

allegations state an actionable detriment. *See Bowerman*, 226 F.3d at 586-87; *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 809 (7th Cir. 2000) (holding that ERISA estoppel applies "where the claimant was misled by written representations of the insurer or plan administrator into failing to take an action that would have enabled the claimant to receive benefits under the Plan"); *Swaback*, 103 F.3d at 542 ("if employees have been deterred, by an employer's misrepresentation, from electing retirement benefits to which they were entitled, they can maintain an ERISA action for those benefits").

   C.  **ICFA and Common Law Fraud (Counts III and IV)**

  MetLife argues that ERISA preempts Sun's state law statutory and common law fraud claims. ERISA provides that it "shall supersede any and all State law insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA "was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted"); *Pohl*, 956 F.2d at 127 (holding that ERISA preemption "knocks out any effort to use state law, including state common law, to obtain benefits under such a plan").

  Although ERISA preemption is "expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), the Seventh Circuit has observed that it is a "murky" doctrine and that "the Supreme Court has been at least mildly schizophrenic" in mapping the contours of what it means for a state law to "relate to any employee benefit plan." *Trs. of AFTRA Health Fund v. Biondi*¸ 303 F.3d 765, 773 (7th Cir. 2002) (internal quotation marks omitted). In *Biondi*, the Seventh Circuit

15

held that a state law can be said to "relate to" an employee benefit plan if it "has a connection with or reference to such a plan." *Id*. at 774 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). A state law can have a "connection with or reference to" an employee benefit plan where it: "(1) mandates employee benefit structures or their administration; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to ERISA." *Id*. at 775 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658-60 (1995)). ERISA also "preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan." *Id*. at 780 (internal quotation marks omitted); *see also Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998) (same). That said, a state law claim is not preempted simply because "it requires a cursory examination of ERISA plan provisions." *Biondi*, 303 F.3d at 780; *see also Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wisc., Inc.*, 657 F.3d 496, 504 (7th Cir. 2011) (same). And when a plaintiff's claim is for common law fraud, "a traditional area of state regulation," the defendant "bears the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Biondi*, 303 F.3d at 775 (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)).

MetLife does not argue that Sun's state law counterclaims mandate employee benefit structures or their administration or that they bind employers or plan administrators to particular choices or precludes uniform administrative practice. Instead, MetLife contends that her counterclaims would require the court to interpret provisions of an ERISA plan and that she seeks to utilize Illinois law as an alternative enforcement mechanism. Doc. 51 at 23-24. "The

16

Supreme Court has identified two categories of state laws that act as alternative enforcement mechanisms to ERISA. One is where the existence of a pension plan is a critical element of a state-law cause of action, and the other is where a state statute contains provisions that expressly refer to ERISA or ERISA plans." *Biondi*, 303 F.3d at 776 (quoting *De Buono*, 520 U.S. at 815). Neither the ICFA nor the law of Illinois common law fraud expressly refer to ERISA or ERISA plans. *See* 815 ILCS § 505/1 *et seq.*; *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 591, 593 (Ill. 1996) (listing the elements for ICFA and common law fraud claims). Thus, MetLife's preemption argument succeeds only if an ERISA plan is a critical element of Sun's state law claims or if adjudicating those claims would require the court to interpret the provisions of an ERISA plan. *See Biondi*, 303 F.3d at 776, 780; *Laborers' Pension Fund v. Lake City Janitorial, Inc.*, 758 F. Supp. 2d 607, 615 (N.D. Ill. 2010) ("preemption is appropriate under the third prong of *Biondi*" only when "the existence of a pension plan is a critical element of a state-law cause of action," or when a state law claim "requires the court to interpret or apply the terms of an employee benefit plan") (internal quotation marks omitted).

  Sun argues that ERISA preemption does not apply on either of these grounds: "The primary issue is not what the terms of the Plan mean. Rather, the basis of Sun's fraud claims is that MetLife led the Decedent and Sun to believe that the Decedent's designation of Sun as a beneficiary was proper, and after the Decedent died, informed Sun it was not." Doc. 55 at 13. Sun is correct. Although the context of Sun's fraud claims involves an ERISA plan, Sun's allegations focus on conduct extrinsic to the plan. The claims allege that MetLife engaged in deceptive and misleading conduct by accepting premium payments for Policy 2 and by failing to inform Sun and Decedent that Policy 2 was, in fact, void. Doc. 19 at ¶¶ 36-37. The claims seek recovery, then, for fraudulent conduct that occurred outside the plans.

17

Sun's request for compensatory damages in an amount "equal to 33%" of the benefits under Policy 1, Doc. 19 at ¶ 40, does not render her claims an alternative enforcement mechanism to ERISA or require the court to interpret the provisions of an ERISA plan. Rather, Sun's fraud claims aim to hold MetLife accountable for misleading Sun into believing she was covered by Decedent's life insurance policy. Because Sun is not attempting to use fraud claims to enforce the terms of an ERISA plan, and because resolving those claims will require no more than a cursory look at the policies, the claims are not preempted. *See Biondi*, 303 F.3d at 779, 780 (finding no preemption where a "common law fraud claim does not requires us to interpret or apply any of the Plan's provisions" and when "the Plan is merely the context in which Biondi's fraudulent conduct occurred"); *Laborers' Pension Fund*, 758 F. Supp. 2d at 615-16 (holding that "ERISA does not preempt plaintiffs' common law fraud claim" because "one's decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law") (quoting *Biondi*, 303 F.3d at 781); *Krukowski v. Omicron Techs., Inc.*, 2013 WL 3874039, at *6 (N.D. Ill. July 26, 2013) ("the Seventh Circuit specifically noted [in *Biondi*] that ERISA's broad preemptive effect could not be used to shield a defendant from the consequences of his fraudulent actions").

MetLife's two-paragraph reply on the preemption issue makes no attempt to distinguish *Biondi*. MetLife's silence provides an additional ground, forfeiture, for denying dismissal of the statutory and common law fraud claims. *See Fletcher v. ZLB Behring LLC*, 2006 WL 218164, at *5 (N.D. Ill. Jan. 27, 2006) (denying a motion to dismiss state law fraud claims as preempted by ERISA where the defendant "does not explain why the Court should not follow the *Biondi* Court's dictates"); *see also Alioto*, 651 F.3d at 72; *Cincinnati Ins. Co.*, 260 F.3d at 747; *Bonte*, 624 F.3d at 466.

18

**Conclusion**

For the foregoing reasons, Met Life's motion to dismiss is granted in part and denied in part. All of Yaqun Zhang's counterclaims are dismissed, as is Count I of Sun's counterclaims. Sun's other counterclaims may proceed, and MetLife has until September 25, 2013, to answer those counterclaims.

September 4, 2013

_____
United States District Judge